852 So.2d 78 (2003)
William A. STEELE, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2000-KA-01561-COA.
Court of Appeals of Mississippi.
May 20, 2003.
Rehearing Denied August 12, 2003.
*79 David S. Strong, McComb, attorney for appellant.
Office of the Attorney General by John R. Henry, attorney for appellee.
Before SOUTHWICK, P.J., LEE and GRIFFIS, JJ.
SOUTHWICK, P.J., for the court.
¶ 1. William Steele was convicted by a jury in Pike County of depraved heart murder and shooting into an occupied vehicle. Steele appeals, challenging the weight and sufficiency of the evidence supporting the conviction. Finding no error, we affirm.

STATEMENT OF FACTS
¶ 2. In the early morning hours of October 11, 1999, William Steele and Charles Dumont were working as security guards at the Club Paradise located outside McComb. One of the club's patrons, Dexter Robinson, was engaged in an argument with his girlfriend at the time, Amanda Porter, in the parking lot. Though accounts vary regarding how heated the discussion became, Robinson admits holding a gun during the encounter. Robinson, Porter, and Porter's sister, Ronique Gayden (also present for the exchange), each testified that Robinson was attempting to give the handgun to Porter for safekeeping, as Robinson feared police harassment on his way home. Dumont, a co-defendant at trial, testified that he witnessed Robinson pointing the gun at Porter's side.
¶ 3. Dumont testified that he alerted Steele, his supervisor, that there was a man with a gun in the parking lot. Dumont then approached Robinson and told him repeatedly to put the gun on the ground. Robinson denies that Dumont spoke to him, but upon ending his discussion with Porter, he did put the gun in his rear pocket and began walking back to his car. Dumont then grabbed Robinson by the shirt sleeve. The two began to wrestle. Dumont testified that Robinson made it to his car and tossed his gun into the passenger compartment, where it was picked up by the decedent, Larry "Sweetpea" Williams. Dumont stated that as Robinson continued to wrestle with him while also trying to put the car in gear, Williams pointed the gun in Dumont's direction. Dumont attempted to maneuver Robinson between himself and the gun, and Williams then turned and waved the gun at the tinted rear window, in the direction of Steele.
¶ 4. Steele fired the first, and ultimately fatal, shot. Dumont, unsure of who was shooting, immediately released Robinson and stepped back from the car. Robinson admitted throwing the gun into the passenger compartment as he sat down in the vehicle, but testified that he did not see Williams handle the gun. Robinson did not hear the first gunshot, but noted that Dumont abruptly released him and kicked the car door shut.
¶ 5. Dumont testified that as he stepped back from Robinson's car, Steele ordered him to shoot out the tires. Dumont and Steele opened fire, shooting repeatedly at the rear tires.
¶ 6. Robinson's statements given after the incident conflicted with his trial testimony as to whether he became aware of gunfire as he stopped to turn from the club's parking lot onto the highway. As he nudged Williams, who was slumped over in the passenger seat, he noticed blood. Robinson testified that Williams asked to leave the car in order to run. Robinson *80 stopped the car and Williams exited. Williams died shortly thereafter. His body was found on the shoulder of the road.

DISCUSSION
¶ 7. Steele's arguments challenge the weight and sufficiency of the evidence. The force of these arguments is that this case does not, indeed cannot, constitute depraved heart murder. We will analyze this contention before reaching his claims for directed verdict or new trial.

1. Depraved heart murder v. culpable negligence manslaughter
¶ 8. Steele was convicted under the depraved heart murder statute, which states:
(1) The killing of a human being without the authority of law by any means or in any manner shall be murder in the following cases:
...
(b) When done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual;
Miss.Code Ann. § 97-3-19(1)(b) (Rev. 2000).
¶ 9. Steele submits that he lacked the requisite malice to sustain a murder conviction, and is therefore guilty of culpable negligence manslaughter, if he is guilty at all.[1]
¶ 10. The distinction between depraved heart murder and culpable negligence manslaughter can be murky. One attempt at a most logical description of the relationship was set out by the Mississippi Supreme Court in Windham v. State, 602 So.2d 798, 801 (Miss.1992):
Depraved-heart murder and culpable-negligence manslaughter are distinguishable simply by degree of mental state of culpability. In short, depraved-heart murder involves a higher degree of recklessness from which malice or deliberate design may be implied.
¶ 11. Steele counters with Tait v. State, 669 So.2d 85 (Miss.1996), in which the Mississippi Supreme Court reversed a depraved heart murder conviction, rendering a culpable negligence manslaughter judgment in its place. The issue appeared to turn on the accidental nature of a shooting when a boy was playing with a gun. Id. at 90. Even the Tait court recognized that "[t]his Court's construction of depraved heart murder as encompassing `a reckless and eminently dangerous act directed toward a single individual' would seem to include the defendant's act of pointing a gun at the victim and pulling the trigger." Id. Nevertheless, the Court then distinguished the case from its nearest factual counterpart, holding no depraved heart murder as a matter of law. Id. See Blanks v. State, 547 So.2d 29 (Miss.1989).
¶ 12. Tait is distinguishable from Steele's circumstances on several fronts, most notably the absence of accident. Indeed, under Windham, the proper guiding principle is not whether the killing was unintentional or accidental; rather, it is the degree of recklessness employed by *81 the defendant. See Michael H. Hoffheimer, "Murder and Manslaughter in Mississippi: Unintentional Killings," 71 MISS. L.J. 35, 117 (2001). That degree of recklessness can be reconciled in the cases by resolving the question of the defendant's intent as to the underlying act (i.e., the shooting), rather than the intent as to the killing. In each of the previously cited cases, the killing was unintentional. However, in cases involving shootings, the courts have consistently upheld convictions of depraved heart murder where the evidence suggested that the firing of a weapon was intentional, not accidental. See, e.g., Turner v. State, 796 So.2d 998 (Miss. 2001); Evans v. State, 797 So.2d 811 (Miss. 2000); Clark v. State, 693 So.2d 927 (Miss. 1997).
¶ 13. Intentionally firing an instrument as deadly as most handguns is often found to be in disregard of the life of others, even if there was no intention to kill or even injure. Indeed, the potential harm arising from being wrong in a belief that a firearm is unloaded is so severe that this Court, over a well-written dissent, found that placing the barrel of a gun believed to be unloaded on a person's forehead and pulling the trigger could be found by jurors to be in utter disregard for the life of another. Dowda v. State, 776 So.2d 714, 716 (Miss.Ct.App.2000).
¶ 14. Here, the jury was instructed on both depraved heart murder and culpable negligence manslaughter. Both were proper. There is no evidence in the record to suggest that Steele did not intend to shoot. Indeed, Steele's theory was that he acted intentionally but in self-defense. The choice of verdict among murder, manslaughter, or acquittal turned on fact questions of Steele's intent as he fired into Robinson's vehicle. Depraved heart murder was an appropriate verdict.

2. Sufficiency of the evidence
¶ 15. Steele correctly notes that although motions for directed verdict, requests for peremptory "not guilty" jury instructions, and motions for judgment notwithstanding the verdict all attack the legal sufficiency of the evidence, it is the ruling made on the last occasion which is properly before this Court. Wetz v. State, 503 So.2d 803, 807 (Miss.1987).
¶ 16. To consider Steele's contention that the evidence is insufficient to support his conviction, we must examine both the evidence presented to the jury and the reasonable inferences that arise from that evidence, in a light consistent with the verdict. We may then reverse only if rational and fair-minded jurors could not have found the defendant guilty beyond a reasonable doubt. Brooks v. State, 695 So.2d 593, 594 (Miss.1997).
¶ 17. Steele claims that the State failed to rebut his self-defense theory offered at trial. The burden of rebutting self-defense rests with the prosecution:
The burden of proof in a criminal case never shifts from the State to the defendant. The State is required to prove every material element of the indictment beyond reasonable doubt. Likewise, the defendant is not required to prove that he acted in self-defense, and, if a reasonable doubt of his guilt arises from the evidence, including evidence of self-defense, he must be acquitted.
Sloan v. State, 368 So.2d 228, 229 (Miss. 1979).
¶ 18. Here, the jury was properly instructed that Steele need not prove self-defense. The evidence raising self-defense was Dumont's testimony that as he wrestled with Robinson, he witnessed Williams point a gun at the heavily tinted rear window, in the direction of Steele. Steele *82 also gave a statement to that effect to authorities.
¶ 19. We have discussed above the propriety of the charge of depraved heart murder. We find that from the evidence in the record, a rational and fair-minded juror could have rejected self-defense.

3. Weight of the evidence
¶ 20. Steele further challenges his conviction as contrary to the overwhelming weight of the evidence. Accepting as true the evidence supporting the verdict, we will disturb a jury verdict only when convinced that the verdict will result in an "unconscionable injustice." Groseclose v. State, 440 So.2d 297, 300 (Miss.1983).
¶ 21. This standard is admittedly high, but the basis for it is our deference to the jury's verdict. "Any less stringent rule would denigrate the constitutional power and responsibility of the jury in our criminal justice system." Burrell v. State, 613 So.2d 1186, 1191 (Miss.1993). Both the depraved heart murder and culpable negligence manslaughter instructions were given. The question essentially before the jury was how reckless was Steele? The jury resolved that question by convicting of depraved heart murder. We cannot say that this verdict resulted in unconscionable injustice.
¶ 22. Steele is correct that evidence supported a charge of culpable negligence manslaughter. Other evidence also supports the charge of depraved heart murder under which he was convicted. We affirm.
¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF PIKE COUNTY OF CONVICTION OF COUNT I MURDER AND SENTENCE OF LIFE; COUNT II SHOOTING INTO AN OCCUPIED VEHICLE AND SENTENCE OF FIVE YEARS, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, FINE OF $10,000 AND RESTITUTION TO THE CRIME VICTIM'S COMPENSATION FUND WITH SENTENCE IN COUNT II TO RUN CONCURRENTLY TO SENTENCE IN COUNT I IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO PIKE COUNTY.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER and GRIFFIS, JJ., CONCUR.
NOTES
[1] Culpable negligence manslaughter is encompassed by statute in Miss.Code Ann. § 97-3-47 (Rev.2000): "Every other killing of a human being, by the act, procurement, or culpable negligence of another, and without authority of law, not provided for in this title, shall be manslaughter."

Culpable negligence has been further defined judicially as "negligence of a degree so gross as to be tantamount to a wanton disregard of, or utter indifference to, the safety of human life." Clayton v. State, 652 So.2d 720, 726 (Miss.1995).