938 So.2d 277 (2006)
Leon FUQUA a/k/a Fugua Leon a/k/a Leomie Fuqua, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2004-KA-00491-COA.
Court of Appeals of Mississippi.
March 7, 2006.
Rehearing Denied June 27, 2006.
*280 George T. Holmes, Jackson, attorney for appellant.
Office of the Attorney General by Scott Stuart, attorney for appellee.
EN BANC.

MODIFIED OPINION ON MOTION FOR REHEARING
CHANDLER, J., for the Court.
¶ 1. The State's motion for rehearing is granted. The original opinion issued in this case is withdrawn, and the following opinion is substituted therefor.
¶ 2. The appellant, Leon Fuqua, was convicted in the Circuit Court for the First Judicial District of Hinds County of the crimes of capital murder and arson. Fuqua was sentenced as a habitual offender to two consecutive life terms without the possibility of parole. Fuqua appeals, asserting six assignments of error.
¶ 3. Finding no error, we affirm.

FACTS
¶ 4. Fuqua resided with Janis Taylor and her boyfriend, Roy Williams, on East Davis Street in Jackson, Mississippi. On the evening of February 16, 2002, Taylor and Williams returned to the apartment to find Fuqua, his boyfriend, Albert Pitts, and Ray Charles Ainsworth in the living room. Fuqua and Ainsworth were naked and engaged in oral sex. While the pair was so engaged, several witnesses came and went from the apartment.
¶ 5. At some point during the encounter, Fuqua and Pitts began striking Ainsworth's head with various objects whenever Ainsworth stopped performing oral sex upon Fuqua. Witnesses described these objects as a belt, an axe, a pipe and a crowbar. Taylor observed that the repeated beatings caused Ainsworth's face and head to swell severely. After a time, Fuqua and Pitts allowed Ainsworth to take his clothes and leave. Ainsworth did not leave, but sat down. Taylor heard Ainsworth complain to Fuqua of feeling cold. Fuqua brought Ainsworth a blanket and Ainsworth lay down on the floor.
¶ 6. Early the next morning, Taylor inquired as to Ainsworth's whereabouts. Fuqua told her that, when he checked on Ainsworth, Ainsworth was not breathing and his body was very cold. Fuqua told Taylor that he and Pitts had wrapped Ainsworth in the blanket, carried him to an empty house, and set the house on fire.
¶ 7. Around 6:30 a.m. that day, the Jackson Fire Department was dispatched to East Davis Street in response to a fire at an abandoned house. An arson investigator concluded that the fire had been intentionally set using rubbing alcohol as an accelerant. A badly burned human corpse was found inside the house. From dental records, the corpse was determined to be that of Ainsworth. The pathologist, Dr. Steven Hayne, determined that the cause of death was a subdural hemorrhage secondary to a closed head injury. The manner of death was homicide. Dr. Hayne partially based his finding of homicide upon witness statements provided by the district attorney.
¶ 8. The Jackson Police Department's investigation of the death led to the issuance of a search warrant for Fuqua's apartment. After the search, Fuqua waived his rights and gave the police two confessions, one hand-written and one typed. According to the typed confession, Pitts beat Ainsworth to death by himself and then Pitts and Fuqua rolled up Ainsworth's body in a blanket, took it to the abandoned house, and set the house on fire using rubbing alcohol. Fuqua stated that Pitts threatened to kill him if he told anyone what had occurred.
*281 ¶ 9. When the State rested its case, Fuqua did not present any evidence. He was convicted of capital murder and arson. Fuqua timely appeals, asserting the following errors: (1) whether the trial court erred by not dismissing Count 1 of the indictment for lack of an essential element; (2) whether Fuqua was prevented from developing testimony in support of theories of defense; (3) whether the trial court erred in disallowing Fuqua's proffered jury instruction on duress; (4) whether Fuqua was impermissibly prejudiced by the admission of irrelevant evidence; (5) whether the verdict of guilty of capital murder, as opposed to manslaughter, is supported by the evidence; and (6) whether the defendant was illegally sentenced as a habitual offender.

LAW AND ANALYSIS

I. WHETHER THE TRIAL COURT ERRED BY NOT DISMISSING COUNT 1 OF THE INDICTMENT FOR LACK OF AN ESSENTIAL ELEMENT.
¶ 10. Fuqua argues that Count 1 of his indictment insufficiently charged the crime of capital murder with the underlying felony of sexual battery. Specifically, Fuqua argues that the indictment failed to state the elements of the underlying felony of sexual battery. Count 1 of Fuqua's indictment stated:
Fuqua . . . without authority of law, and with or without any design to effect the death, did then and there wilfully, unlawfully, and feloniously, kill, slay, and murder Ray Charles Ainsworth, a human being, in violation of Section 97-3-19(2)(e), Mississippi Code, 1972, as amended, while, the said [Fuqua was] engaged in commission of the crime of sexual battery of Ray Charles Ainsworth or in the attempt to commit such offense, by wilfully, unlawfully and feloniously engaging in sexual penetration with Ray Charles in that, he the said [Fuqua] forced the victim, Ray Charles Ainsworth to perform fellatio on the said [Fuqua].
Before the trial, Fuqua objected to the sufficiency of the indictment. The trial court found that the indictment was sufficient and overruled Fuqua's motion.
¶ 11. "[I]t is a well-established principle of law that in order for an indictment to be sufficient, it must contain the essential elements of the crime charged." Peterson v. State, 671 So.2d 647, 652-53 (Miss.1996). More specifically,
it is fundamental . . . that an indictment, to be effective as such, must set forth the constituent elements of a criminal offense; if the facts alleged do not constitute such an offense within the terms and meaning of the law or laws on which the accusation is based or if the facts alleged may all be true and yet constitute no offense, the indictment is insufficient. . . . Every material fact and essential ingredient of the offense  must be alleged with precision and certainty, or, as has been stated, every fact which is an element in a prima facie case of guilt must be stated in the indictment.
Id. at 653 (quoting Love v. State, 211 Miss. 606, 611, 52 So.2d 470, 471 (1951)). "The ultimate test, when considering the validity of an indictment on appeal, is whether the defendant was prejudiced in the preparation of his defense." Medina v. State, 688 So.2d 727, 730 (Miss.1996).
¶ 12. In Peterson, the court applied these principles to find that an indictment was insufficient to charge the defendant with sexual battery. The definition of sexual battery provides, in pertinent part, that "(1) A person is guilty of sexual battery if he or she engages in sexual penetration with: (a) Another person without his or her consent." Miss.Code Ann. *282 § 97-3-95 (Rev.2000). Peterson's indictment failed to include the words, "without her consent." The court held that "[l]ack of consent is an essential fact necessary to constitute the crime of sexual battery." Id. at 655. Since Peterson's indictment did not charge the essential element of lack of consent, the indictment was fatally flawed. Id. Fuqua argues that, as in Peterson, his indictment was insufficient for failure to include the language, "without his consent." Fuqua argues that the omission of this language left him unable to adequately prepare for trial.
¶ 13. We find that Count 1 of Fuqua's indictment was sufficient. Count 1 charged Fuqua with capital murder with the predicate felony of sexual battery, not for sexual battery alone. "A capital murder indictment based on an underlying felony, other than burglary, does not have to specifically set forth the elements of the underlying felony used to elevate the crime to capital murder." Gray v. State, 728 So.2d 36, 71 (¶ 174) (Miss.1998). For capital murders with underlying felonies other than burglary, naming the underlying felony in the indictment is sufficient to put the defendant on notice of the crime charged. See Stevens v. State, 808 So.2d 908, 920(¶ 38) (Miss.2002).
¶ 14. The reason that an indictment for capital murder with the underlying felony of burglary must state the felony underlying the burglary is "[b]urglary is unlike robbery and all other capital murder predicate felonies in that it requires as an essential element the intent to commit another crime." Gray, 728 So.2d at 71 (¶ 174). Since the intent to commit a felony is an essential element of burglary, the defendant must be afforded notice of the felony underlying the burglary that the State will attempt to prove at the trial. Id.; State v. Berryhill, 703 So.2d 250, 256(¶ 25) (Miss.1997). Unlike burglary, an underlying felony is not an essential element of sexual battery or of the other predicate felonies to capital murder. Gray, 728 So.2d at 71 (¶ 174). Therefore, there is no requirement that, in a capital murder indictment, the State must list the essential elements of any capital murder predicate felonies save burglary. Id. Fuqua's indictment was not defective for failure to include the essential elements of sexual battery.
¶ 15. The indictment properly charged Fuqua with capital murder with the underlying felony of sexual battery as defined in Mississippi Code Annotated 97-3-19(2)(e). Further, the indictment adequately apprised Fuqua of the facts supporting the charge of capital murder. This issue is without merit.

II. WHETHER FUQUA WAS PREVENTED FROM DEVELOPING TESTIMONY IN SUPPORT OF THEORIES OF DEFENSE.
¶ 16. Fuqua asserts that he was prevented from developing several theories of defense including: accidental death during consensual rough sex, death as a result of Ainsworth's own negligence, Fuqua's duress at the hands of his co-defendant Albert Pitts, and the lesser offense of manslaughter by culpable negligence. Fuqua further argues that the cumulative prejudice created by the stifling of these defenses warrants reversal. See Griffin v. State, 557 So.2d 542, 553 (Miss.1990).
¶ 17. The State filed a motion in limine to exclude evidence of sexual relations between Ainsworth and Fuqua prior to the date of the crime pursuant to M.R.E. 412. The court found that evidence of sexual behavior that occurred prior to February 16, 2002 was not relevant. Fuqua argues that past sexual battery is a continuing episodic event such as child abuse.
*283 ¶ 18. The standard of review regarding the admission or exclusion of evidence is abuse of discretion. Yoste v. Wal-Mart Stores, Inc., 822 So.2d 935, 936(¶ 7) (Miss.2002). Consensual sex between adults on prior occasions is certainly not, by any stretch of the imagination, comparable to episodic child abuse. All that was relevant regarding sexual relations at this trial was whether the victim consented to the shocking abuses visited upon him on February 16, 2002.
¶ 19. The trial court further found that, even if instances of prior sex had been relevant, the court could have excluded the evidence as overly prejudicial under M.R.E. 403. We find that the trial court's exclusion of the evidence of prior sexual relations between Fuqua and Ainsworth was not an abuse of discretion. Further, we have reviewed the record concerning Fuqua's other theories of defense. We find that Fuqua was allowed a fair opportunity for cross-examination of the State's witnesses in order to develop his defense theories and, therefore, he was not prejudiced. This issue is without merit.

III. WHETHER THE TRIAL COURT ERRED IN DISALLOWING FUQUA'S DURESS DEFENSE JURY INSTRUCTION.
¶ 20. Fuqua next argues that the trial court erred in refusing his proffered jury instruction on duress. Longstanding Mississippi law holds that duress is not a legal defense to murder. Watson v. State, 212 Miss. 788, 793, 55 So.2d 441, 443 (1951). "A person is not authorized to take the life of another person at the command of a third person, whether he is in fear of such person or not . . . ." Wilson v. State, 390 So.2d 575, 576 (Miss.1980).
¶ 21. Assuming arguendo that duress were a defense, there was no evidence at trial to support a finding that Fuqua's death or serious bodily injury was imminent, or that Fuqua was not negligent by placing himself in such a situation. See Lester v. State, 767 So.2d 219, 224(¶ 18) (Miss.Ct.App.2000). This issue is without merit.

IV. WHETHER FUQUA WAS IRREPARABLY PREJUDICED BY THE ADMISSION OF IRRELEVANT EVIDENCE.
¶ 22. Fuqua next argues that the trial court erred in allowing the admission of a homemade glass shank. The shank was admitted during the testimony of Investigator James Roberts. Roberts stated that he found numerous objects in or underneath the couch in Fuqua's living room. The trial court admitted each object into evidence after Roberts identified the object as having been found in or underneath the couch. The objects included a hammer head, a full hammer, a toy duck, a metal pipe, and the shank. After Roberts identified the shank as having been found underneath the couch, Fuqua objected to the admission of the shank as being irrelevant and more prejudicial than probative. The prosecutor argued that the shank was relevant because it was found at the crime scene and had been tested for the presence of blood. The trial court admitted the shank.
¶ 23. Later in the trial, Katina Robbins with the Jackson Police Department Crime Lab testified that the shank had not been among those items tested for the presence of blood. The crime lab did test the hammer head, the full hammer, the toy duck, and the metal pipe. The lab found blood on the hammer head and the duck. This blood was determined to be Ainsworth's. Also, the pipe and the full hammer were positive for the possible presence of human blood.
¶ 24. When the State rested its case, Fuqua renewed his objection to the admission *284 of the shank on the ground that, because there was no evidence the shank had been used to harm Ainsworth, the shank was more prejudicial than probative. The State offered to withdraw the shank from evidence. Fuqua moved for a mistrial because the jury already had seen the shank. The court found that the shank was admissible because it was among other objects found together at the crime scene. The court alternatively found that, even if the admission of the shank was error, it was harmless, and no mistrial was warranted.
¶ 25. On appeal, Fuqua argues that the shank was extremely prejudicial; therefore, the court's denial of a mistrial constituted reversible error. The court may grant a mistrial only when the harm done would render the defendant without hope of receiving a fair trial. Reed v. State, 764 So.2d 511, 513(¶ 7) (Miss.Ct.App.2000). This Court reviews the denial of a motion for a mistrial for abuse of discretion. Spann v. State, 771 So.2d 883, 889(¶ 9) (Miss.2000).
¶ 26. We first review the admissibility of the shank. All relevant evidence is admissible unless its probative value is substantially outweighed by its potential for prejudice. M.R.E. 402, 403. "`Relevant Evidence' is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." M.R.E. 401. The State made no showing that the shank had been used to harm Ainsworth. However, the shank was found by investigators in close proximity with other items that were used to commit the crime. In Wilkins v. State, 264 So.2d 411, 413 (Miss.1972), the court stated:
articles such as tools or weapons found near the place or scene of the crime have been admitted in evidence . . . even where it is not claimed or proved that they were used in the commission of the alleged crime in cases where the evidence has probative weight, or where they constitute a part of the surrounding scene or picture, or are a part of the circumstances of the arrest.
We find that the shank was at least minimally relevant as part of the "surrounding scene or picture" of the crime.
¶ 27. Under the particular facts of this case, since there was no showing by the State that the shank was used to commit the crime, the shank was of minimal probative value. If, at the time the State proffered the shank, the trial court had been aware that there was no evidence the shank was used to harm Fuqua, the court certainly would have been within its discretion in excluding the shank pursuant to Rule 403 as more prejudicial than probative. However, the question before this Court is whether the admission of the shank was so prejudicial that the trial court's refusal to declare a mistrial was an abuse of discretion.
¶ 28. The lower court held that, even if admission of the shank was error, such error was harmless and did not substantially prejudice Fuqua. We agree. "An error is harmless when it is apparent on the face of the record that a fair-minded jury could have arrived at no verdict other than that of guilty." Floyd v. City of Crystal Springs, 749 So.2d 110, 120 (¶ 37) (Miss.1999) (citing Forrest v. State, 335 So.2d 900, 903 (Miss.1976)). The evidence against Fuqua, such as the testimony from multiple eyewitnesses, the fact that Ainsworth's blood was found on objects found in Fuqua's living room, and Fuqua's own statement to the police, was overwhelming. We find that a fair-minded jury could have reached no other verdict than that of guilty. Therefore, even if the admission of the shank was error, such *285 error was harmless. This issue is without merit.

V. WHETHER THE VERDICT OF GUILTY OF CAPITAL MURDER, AS OPPOSED TO MANSLAUGHTER, IS SUPPORTED BY THE EVIDENCE.
¶ 29. Fuqua's motion for a JNOV was denied by the trial court. Fuqua asserts that his conviction of capital murder was unsupported by the evidence. Fuqua reasons that all of the witnesses testified that the sex was consensual and, therefore, the State failed to prove the predicate felony of sexual battery. Fuqua argues that, at most, the only conviction that could be said to be supported by the evidence is manslaughter. See Miss.Code Ann. § 97-3-35 (Rev.2000).
¶ 30. A motion for a JNOV challenges the legal sufficiency of the evidence. In reviewing the denial of a motion for a JNOV, this court is allowed to set aside the jury's verdict only if we are convinced that, as to one of the essential elements of the crime, the State's proof was so deficient that a reasonable and fair-minded juror could only find the defendant not guilty. Byars v. State, 835 So.2d 965, 970(¶ 13) (Miss.Ct.App.2003).
¶ 31. Mississippi Code Annotated § 97-3-35 states: "The killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense, shall be manslaughter." Culpable negligence manslaughter is defined in Mississippi Code Annotated § 97-3-47 (Rev. 2000), which provides, "Every other killing of a human being, by the act, procurement, or culpable negligence of another, and without authority of law, not provided for in this title, shall be manslaughter." "Culpable negligence has been further defined judicially as `negligence of a degree so gross as to be tantamount to a wanton disregard of, or utter indifference to, the safety of human life.'" Steele v. State, 852 So.2d 78, 80(¶ 9) (Miss.Ct.App.2003) (citing Clayton v. State, 652 So.2d 720, 726 (Miss. 1995)).
¶ 32. Fuqua argues that the facts sub judice are analogous to the facts of an accidental shooting death in Tait v. State, 669 So.2d 85 (Miss.1996). In Tait, the defendant was convicted of depraved heart murder and appealed on the grounds that the weight and sufficiency of the evidence should have led only to a conviction for manslaughter by culpable negligence. Tait, 669 So.2d at 87-88. The defendant and victim in Tait were engaged in horseplay involving a revolver. When the defendant put the gun to the victim's head, it accidentally discharged, killing the victim. Id. The Mississippi Supreme Court ruled that the only proper verdict supported by the evidence was manslaughter by culpable negligence. Id. at 90.
¶ 33. In overturning the conviction for murder the court relied on the following construction of depraved heart murder as applied to the facts of the case:
"a reckless and eminently dangerous act directed towards a single individual" would seem to include the defendant's act of pointing a gun at the victim and pulling the trigger. However, when looking at cases which have discussed depraved heart murder, the closest factually is Blanks v. State, supra. Even though the defendant in Blanks was convicted of manslaughter, this Court said it was proper for the jury to be instructed as to depraved heart murder because the defendant's conduct following the shooting when he moved and dumped the body and his initial statements in which he denied the killing were not consistent with an accidental killing. Blanks, 547 So.2d at 34. The present *286 case is distinguishable from Blanks because Tait's conduct of falling to the ground and crying following the shooting could be considered as consistent with an accident.
Tait, 669 So.2d at 90 (distinguishing Blanks v. State, 547 So.2d 29 (Miss.1989)). Fuqua asserts that the dangerous horseplay in Tait is analogous to the violent alleged consensual sex in the instant case.
¶ 34. The State argues that there was ample evidence that would allow a hypothetical juror, acting in good faith, to have found that Fuqua was engaged in the commission of sexual battery when he killed Ainsworth. For instance, Janis Taylor, an eyewitness, testified about whether the oral sex had become non-consensual. Taylor stated, "Yes, as far as beating him when he didn't. But, you know, this isn't the first time that ever happened." Moreover, testimony established that Ainsworth was beaten so severely that his head swelled up "like a pumpkin" and that Ainsworth had been battered so badly that he could not open his mouth.
¶ 35. In Steele v. State, the defendant was convicted of depraved heart murder for shooting into an unoccupied vehicle. Steele v. State, 852 So.2d 78, 79(¶ 1) (Miss. Ct.App.2003). Steele argued on appeal, as does Fuqua, that he lacked the requisite malice to sustain a murder conviction. Steele, 852 So.2d at 80(¶ 9). The defendant in Steele argued, again as does Fuqua, that Tait provided the controlling law. The court distinguished Tait as follows:

Tait is distinguishable from Steele's circumstances on several fronts, most notably the absence of accident. Indeed, under Windham, the proper guiding principle is not whether the killing was unintentional or accidental; rather, it is the degree of recklessness employed by the defendant. See Michael J. Hoffheimer, "Murder and Manslaughter in Mississippi: Unintentional Killings," 71 Miss. L.J. 35, 117 (2001). That degree of recklessness can be reconciled in the cases by resolving the question of the defendant's intent as to the underlying act (i.e., the shooting), rather than the intent as to the killing. In each of the previously cited cases, the killing was unintentional. However, in cases involving shootings, the courts have consistently upheld convictions of depraved heart murder where the evidence suggested that the firing of a weapon was intentional, not accidental. See, e.g., Turner v. State, 796 So.2d 998 (Miss. 2001); Evans v. State, 797 So.2d 811 (Miss.2000); Clark v. State, 693 So.2d 927 (Miss.1997).
Steele, 852 So.2d at 80-81 (citing Windham v. State, 602 So.2d 798, 801 (Miss.1992)). After reviewing the evidence, the court ruled that there was no evidence that Steele did not intend to shoot; accordingly, the court found that murder was an appropriate verdict. Id. at 81.
¶ 36. After reviewing the evidence in the record before us, it is manifest that Fuqua intended to beat Ainsworth just as the defendant in Steele intended to shoot at an occupied vehicle. We observe that Fuqua's reliance on Tait is ironic because Tait itself directs the Court to distinguish facts such as those sub judice from those in Tait. The Tait court, in holding that the evidence supported manslaughter by culpable negligence, distinguished the facts of the case before it from those in Blanks, where the defendant moved and then dumped the victim's body. The facts sub judice, in which Fuqua intended to severely beat Ainsworth, then moved and burned his body, are analogous to the facts in Blanks. This issue is without merit.

VI. WHETHER THE DEFENDANT WAS ILLEGALLY SENTENCED AS A HABITUAL OFFENDER.
¶ 37. Fuqua's final assignment of error alleges that, by failing to enter an *287 order amending the indictment to charge Fuqua as a habitual offender, the amendment by the State at trial was ineffective and could not have been used in sentencing. "The State is required to make sure that such an order appears in the record and the defense is required to object to the absence of such order if it wishes to preserve this point for appeal." Reed v. State, 506 So.2d 277, 279 (Miss.1987). Due to Fuqua's failure to object at trial, this issue is procedurally barred.
¶ 38. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT OF CONVICTION ON COUNT I, OF CAPITAL MURDER AND SENTENCE OF LIFE WITHOUT THE POSSIBILITY OF PAROLE, AND ON COUNT II, OF CONVICTION OF ARSON AND SENTENCE OF LIFE WITHOUT THE POSSIBILITY OF PAROLE, WITH SENTENCES TO RUN CONSECUTIVELY, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS AND BARNES, JJ., CONCUR. SOUTHWICK, ISHEE AND ROBERTS, JJ., NOT PARTICIPATING.