CHANDLER, Justice,
dissenting:
¶ 29. Because I believe that the trial court properly refused to give Banyard a duress instruction, I respectfully dissent. This Court’s longstanding precedent has been that duress is not a defense to murder. See Wilson v. State, 390 So.2d 575, 576 n. 1 (Miss.1980); Watson v. State, 212 Miss. 788, 55 So.2d 441 (1951); Taylor v. State, 158 Miss. 505, 130 So. 502 (1930). Application of this principle logically has been applied to capital murder cases. See Ruffin v. State, 992 So.2d 1165 (Miss.2008); West v. State, 725 So.2d 872 (Miss.1998) (overruled on other grounds); Fuqua v. State, 938 So.2d 277 (Miss.Ct.App.2006). Additionally, I write to address the majority’s concern about jury instruction 8.
I.
¶ 30. This Court reads jury instructions as a whole and not in isolation. Walker v. State, 913 So.2d 198, 234 (Miss.2005). When the instructions are read as a whole, “if the instructions fairly announce the law of the case and create no injustice[,]” the appellate court will find no reversible error. Montana v. State, 822 So.2d 954, 958 (Miss.2002). “A defendant is entitled to jury instructions on his theory of the case whenever there is evidence that would support a jury’s finding on that theory.” Id. at 962. However, a trial court may refuse a jury instruction when it is an incorrect statement of law, fairly covered in other instructions, or has no foundation in the evidence. Ruffin v. State, 992 So.2d 1165, 1176 (Miss.2008); Poole v. State, 826 So.2d 1222, 1230 (Miss.2002) (citing Smith v. State, 802 So.2d 82, 88 (Miss.2001)). Reversal is not warranted when instructions, taken as a whole, fairly, though not perfectly, announce the law. Rushing v. State, 911 So.2d 526, 537 (Miss.2005).
II.
¶ 31. This Court has upheld a trial court’s refusal to grant duress instructions *686 in capital murder cases. In Ruffin, Ruffin was charged and convicted of robbery and capital murder with the underlying felony of kidnapping. Ruffin, 992 So.2d at 1169. The trial court allowed a duress instruction for the robbery charge because no eyewitnesses refuted Ruffin’s claim of duress as to the robbery. Id. at 1177. But the jury also received a jury instruction stating that duress is not a defense to capital murder. Id. Ruffin argued that an additional duress instruction should have been given for kidnapping — the underlying felony in the capital murder charge against him — because the evidence demonstrated that his actions resulted from his fear of being killed by another individual. Id.
¶ 32. This Court determined that Ruffin failed to support his theory of duress with sufficient evidence. Ruffin, 992 So.2d at 1177. This Court acknowledged that duress constitutes a defense to most crimes, such as kidnapping, with homicide the exception to the rule. Id. at 1178 (citations omitted). Notwithstanding the acknowledgment that homicide is an exception to a duress defense, the Court analyzed the issue of duress and whether Ruffin proved a “present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury.” Id. (citing West, 725 So.2d at 890 n. 7). This Court found that not only was this case weaker than West, discussed below, but also, no rational juror could have found that Ruffin acted under duress, especially since he had the only gun in his possession on more than one occasion. Id. Additionally, the Court determined that Ruffin had reasonable alternatives to committing the crime. Id. (citing West, 725 So.2d at 887-90).
¶ 33. This Court has addressed a similar fact pattern in another capital murder trial with alleged duress contributing to the robbery and subsequent murder, as in Banyard’s case. In West, a defendant was convicted of capital murder for the murder of a convenience store clerk in the course of a robbery. West, 725 So.2d at 877. On appeal, West asserted another claim similar to Banyard’s: the trial court erred by refusing a simple murder or a manslaughter instruction where the armed robbery occurred under duress. Id. at 887. Unlike Banyard, the trial court granted a duress instruction to West. Id. at 890. On appeal, however, this Court found that “no rational juror could have found West to have been acting under common-law duress.” Id. at 890. In other words, West was not entitled to the duress instruction. The Court determined that West’s theory of duress was unsubstantiated by the evidence. Id. Notwithstanding the fact that West received the erroneous duress instruction on the robbery charge, this Court found that West was not entitled to a duress instruction for the armed robbery, the underlying felony which elevated the charge of murder to capital murder.
¶ 34. Likewise, in Fuqua, the defendant was charged with capital murder, with the underlying felony of sexual battery, and a separate arson charge. Fuqua, 938 So.2d at 280-81. Again, similar to Banyard, Fu-qua argued that the trial court erred by refusing to grant a jury instruction on duress. Id. at 283. Fuqua claimed that Albert Pitts killed the victim and threatened Fuqua with death if he told anyone about the murder. Id. at 280. The Court of Appeals affirmed the trial court’s denial of the instruction, finding that “[a] person is not authorized to take the life of another person at the command of a third person, whether he is in fear of such person or not....” Id. at 283 (quoting Wilson v. State, 390 So.2d 575, 576 (Miss.1980)). And assuming that Fuqua had a valid point, the Court of Appeals determined that “no evidence at trial [supported] a finding that Fuqua’s death or serious bodi *687 ly injury was imminent, or that Fuqua was not negligent by placing himself in such a situation.” Id.
¶35. Banyard was not entitled to a duress instruction on the underlying felony of robbery, because he too failed to provide any evidence that supported “present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury.” Ruffin, 992 So.2d at 1178 (citing West, 725 So.2d at 890 n. 7); Fuqua, 938 So.2d at 283. Similar to Ruffin and West, Banyard had sole possession of the gun as he walked toward the driver’s side of Robin Ballard’s vehicle. Ragsdale, the alleged threatener, thereafter went to the opposite side of the victim’s vehicle from Banyard. When the victim did not hand over his money, Ragsdale went to the driver’s side of the car, and Banyard claims that the gun fired when he was giving it to Rags-dale.
¶ 36. Banyard stated that he had been afraid of Ragsdale due to a previous altercation earlier in the year. While Banyard stated that he feared that Ragsdale would shoot him, Ragsdale never verbally threatened him. Instead, Banyard described Ragsdale as “serious” and “mean.” Further, there was no evidence that Ragsdale possessed any other weapon. Therefore, Banyard failed to prove “any present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury.” Because Banyard had possession of the only known gun, he had reasonable alternative means other than shooting the victim.
III.
¶37. While the majority determined that the issue of duress was dispositive to this appeal, it also addressed whether the language in jury instruction 8 unconstitutionally shifted the burden of proof to the defendant. Reading the entire instruction in context coupled with jury instructions 5 and 7, instruction 8 did not shift the burden of proof, and the instructions, taken as a whole, adequately instructed the jury on the charges against Banyard. Jury instruction 8, in its entirety, stated:[26]

CAPITAL MURDER

The Court instructs the Jury, that in order for you to convict the Defendant of the crime of Capital Murder, you must unanimously find beyond a reasonable doubt from the evidence in this case that the Defendant, Demarious Banyard, on or about February 24, 2003, wilfully, unlawfully, and feloniously did then and there feloniously take or attempt to take the personal property of Robin Ballard, from the presence of Robin Ballard, against the will of the said Robin Ballard, by violence to his person or by putting Robin Ballard, in fear of immediate injury to his person by the exhibition of a deadly weapon, to-wit: a gun. The commission of such offense is defined as Armed Robbery.
If the jury first unanimously finds beyond a reasonable doubt that Defendant committed the crime of Armed Robbery or Attempted Armed Robbery, then the Juiy must also next find, beyond a reasonable doubt, that on said date, while engaged in the commission of the aforesaid crime of Armed Robbery or [A]t- *688 tempted Armed Robbery, that the Defendant Demarious Banyard, wilfully, unlawfully and feloniously, without authority of law, by any means or by any manner, not in necessary self-defense, did then and there kill Robin Ballard, a human being.
In the event that the Jury unanimously finds beyond a reasonable doubt and to the exclusion of any reasonable hypothesis consistent with innocence, from the evidence in this case, that the Defendant, Demarious Banyard, committed both the Armed Robbery and the Killing of Robin Ballard, as defined in this instruction, then the Defendant is Guilty of “Capital Murder”, and the form of your verdict should be in the following form, WRITTEN ON A SEPARATE SHEET OF PAPER.
“We, the Jury, find the Defendant Guilty of Capital Murder.”

MURDER

The Court further instructs the Jury that if you DO NOT unanimously find the Defendant, Demarious Banyard, is Guilty of Capital Murder, you may continue your deliberations and determine whether the Defendant is guilty of the lesser included offense of “Murder.”
“Murder” is defined as the killing of a human being without the authority of law by any means or in any manner when done with deliberate design to effect the death of the person killed, or of any human being. Therefore, if you DO NOT unanimously find beyond a reasonable doubt that the Defendant is guilty of Capital Murder, but you DO find, beyond a reasonable doubt, that the Defendant, Demarious Banyard, alone or with another, on or about February 24, 2003, did unlawfully and feloniously, without authority of law and not in necessary self-defense, kill Robin Ballard, a human being, with deliberate design to effect the death of Robin Ballard, then the Defendant, Demarious Banyard, is guilty of Murder.
In the event the Jury unanimously finds beyond a reasonable doubt from the evidence in this case and to the exclusion of any reasonable hypothesis consistent with the innocence, that the Defendant committed Murder as defined in this instruction, then and in that event, the form of your verdict should be in the following form, WRITTEN ON A SEPARATE SHEET OF PAPER:
“We the Jury, find the Defendant Guilty of Murder.”

NOT GUILTY

The Court further instructs the Jury that if you unanimously find beyond a reasonable doubt the Defendant is NOT GUILTY of either “Capital Murder” or “Murder”, then the verdict shall be in the following form, WRITTEN ON A SEPARATE SHEET OF PAPER:
“We the Jury finds [sic] the Defendant NOT GUILTY of Capital Murder AND the jury finds the Defendant NOT GUILTY of Murder.”
PLEASE NOTIFY THE BAILIFF WHEN YOU HAVE REACHED YOUR UNANIMOUS VERDICT.
¶ 38. At issue is the language of the last portion of the instruction under the “NOT GUILTY” section, which in part states: “The Court further instructs the Jury that if you unanimously find beyond a reasonable doubt the Defendant is NOT GUILTY of either “Capital Murder” or “Murder”, then the verdict shall be in the following form.... ” (Emphasis added.) This instruction provided the elements for capital murder and murder and contained a form of the verdict. Within the first portion of the instruction pertaining to capital murder, the jury had the elements of armed *689 robbery and murder and unanimously had to find beyond a reasonable doubt and to the exclusion of any reasonable hypothesis consistent with innocence, from the evidence in the case, that Banyard committed both armed robbery and the killing of Ballard. If the jury did not find that the evidence met these elements, then the jury was instructed on the elements of murder. Only if the jury found that the evidence failed to meet either capital murder or murder, was the jury instructed on the form of the “not-guilty” verdict. The instruction clearly set out the options of potential findings of either capital murder, murder, or not guilty. Thus, if the jury found that Banyard was guilty of capital murder, as it did, then the jury had no need to continue with the instruction. But apart from that, the instruction clearly stated that only if the elements for each crime were met could the jury find the defendant guilty of capital murder or, alternately, murder.
¶ 39. Additionally, the jury had instruction 5, which explicitly instructed the jury that a person charged with a crime is presumed innocent, that the State has the burden of proving a defendant’s guilt of each element of a crime beyond a reasonable doubt, and that a defendant is not required to prove his innocence. Jury instruction 5 stated:
The law presumes every person charged with the commission of a crime to be innocent. This presumption places upon the State the burden of proving the Defendant guilty of every material element of the crime with which he is charged. Before you can return a verdict of guilty, the State must prove to your satisfaction beyond a reasonable doubt that the Defendant is guilty. The presumption of innocence attends the Defendant throughout the trial and prevails at its close unless overcome by evidence which satisfies the Jury of his guilt beyond a reasonable doubt. The Defendant is not required to prove his innocence.
¶ 40. Jury instruction 7 instructed the jury on reasonable doubt. It stated:
The Court instructs the Jury that a reasonable doubt may arise from the whole of the evidence, the conflict of the evidence, the lack of evidence, or the insufficiency of the evidence, but, however it arises, if it arises, it is your sworn duty to find the Defendant “Not Guilty.”
¶ 41. Based on a contextual reading of jury instruction 8 and considering the instructions as a whole, the jury received adequate instructions, and the burden did not shift to Banyard.
IV.
¶ 42. For the above reasons, I respectfully dissent and would affirm the judgments of the trial court and the Court of Appeals.
RANDOLPH, J„ JOINS THIS OPINION IN PART.

. The trial judge read the instructions into the record. Her reading of instruction 8 had a few minor differences from the written instruction cited in this separate opinion. The only noticeable difference was that the judge did not read the “CAPITAL MURDER,” “MURDER," and "NOT GUILTY’ headers. Instructions 5 and 7 were read as written and cited in this separate opinion.