Statement of the case.

---

### GEORGE W. WOOD v. STATE OF MISSISSIPPI.

1. CRIMINAL LAW. *Murder.* `Instructions.` *Statutory definition of crime. Code* 1892, § 1149. *Error if inapplicable to case.*

   It is error on the trial of a murder case where it is manifest from the whole evidence that defendant acted with the specific purpose of killing a particular person, to instruct the jury that "the killing of a human being, without authority of law" is murder "when done in the commission of an act eminently dangerous to others and evincing a, depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual;" the instruction, while abstractly correct and in statutory language (code 1892, § 1149), being inapplicable to the case.

2. SAME. *Self-defense.* *Instructions narrowing erroneous.*

   In a murder case, the theory of the defense, supported by evidence, being that defendant shot deceased honestly believing that he was one of a group of persons with whom defendant was having an altercation, an instruction for the state is erroneous which narrows the question of self-defense to the occurrences between defendant and deceased, excluding all consideration of what transpired between defendant and such group.

FROM the circuit court of Lincoln county.

HON. ROBERT POWELL, Judge.

Wood, appellant, was convicted in the circuit court of Lincoln county of the murder of one William Netherland. He was sentenced to the penitentiary for life, and appealed to the supreme court.

The testimony showed that appellant and his brother were proprietors . of a traveling Punch and Judy show, and were giving an entertainment on Pearch creek, in Lincoln county, January 14, 1902, the day of the homicide. The evidence for the state was to the effect that Wood came out of the tent, and said something to some boys who were on a wagon near the

tent, among them being one Albert Lambert, and having some angry words with Lambert, struck him and knocked him off the wagon. Lambert, arising, jerked a picket off a fence, and Wood ran back into the tent, raised the curtain, and said, "I will stop some of the damned sons of bitches," and fired twice, one of the shots striking Netherland in the back near the shoulder blade, from the effect of which he died soon after. The evidence for the defense was to the effect that there was an opening in the tent near the top, and several boys got on a wagon to look into the show, when the mother of Wood came out and remonstrated with them, telling them to pay their fare and come inside, like gentlemen, and they would get value for their money; that one of them insulted her, just as defendant came out of the tent, whereupon one of the crowd applied a vile epithet to him. Wood asked who it was that had so spoken, when Albert Lambert said he was the man. Defendant then went to Lambert, and knocked him off the wagon. Lambert arising, got a picket off a fence and started toward defendant; and several of the others, Lambert's companions, had knives, and all pursued defendant, who ran back into the tent; just then Netherland raised the curtain of the tent, and was entering it, when he was shot by defendant. The opinion of the court contains a further statement of the facts.

*A. C. McNair* and *G. G. Lyell*, for appellant.

The fourth instruction given the state is inapplicable to the case and therefore erroneous.

The instruction as an abstract principle of law is correct, but it is not only inapplicable to the facts of this case, but is misleading. In the case of *Strickland* v. *State*, recently decided by this court, this court held that an instruction based on facts not altogether dissimilar to the facts of this case, in almost the same words as is this instruction was inapplicable and that it was error in the trial court to give it. 32 So. Rep., pp. 921; s.c., *ante*, p. 134. The instant case falls squarely

within the principle of that case. The vice of the ninth instruction for the state is that it restricts the right of the defendant to act to the mere ·fact of Netherland's going under the tent, and shuts off from the jury the acts of Lambert and others on the outside of the tent immediately preceding the entry of Netherland and the shooting. It, too, fails to state that Wood had the right to shoot if the danger was apparent to him, and conveys the idea that the danger must have been actual in order to justify the shooting. The instruction was misleading and should not have been given.

*William Williams*, assistant attorney-general, for appellee.

Counsel for the appellant admits that the fourth instruction as an abstract principle of law is correct, but contends that it is inapplicable to the facts of this case, and cites Strickland's case, decided at this term, in support of this contention. The facts in this case are not similar to the facts in Strickland's case, as will be seen by a comparison of the two cases.

The facts, as disclosed by the record, show that appellant, after having some little altercation with one Lambert on the outside of a show tent, went across the yard, got a pistol, went into the show tent and when the deceased, who had in no way disturbed or molested appellant, started into the tent holding his little child by the hand, appellant fired and killed deceased without knowing who deceased was, or without any word having been said to him by deceased or without deceased having made any demonstration whatever toward appellant. In other words appellant provided himself with a pistol and got on the inside of the show tent and committed an act without cause or provocation imminently dangerous to others, thereby evincing a depraved heart, and showed his utter disregard for human life, and as a result, a citizen, who had in no wise disturbed or interfered with him was killed. Under this state of facts it was not error for the court to give the fourth instruction for the state. The court did not err in giving the ninth instruction.

Netherland, the deceased, had paid to enter the tent for the purpose of seeing the show and had entered the tent, remained in there for some time, but had come out of the tent and was re-entering same holding his child by the hand when he was killed.   Certainly the appellant had no right to shoot Netherland because he was entering the tent.   He had a right to go into the tent.   Appellant had no right or cause to shoot Netherland, because he, the appellant, had had some trouble with Lambert immediately before Netherland had started to re-enter the tent.

Whitfield, C. J., delivered the opinion of the court.

It was manifest error on this record to give the fourth and ninth instructions for the state.   The fourth instruction is in the following words :   " The court instructs the jury that the killing of a human being without authority of law, when done in the commission of an act eminently dangerous to others, and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual, is murder."   This is erroneous and misleading on the facts in this case, because it is manifest from the testimony for the state as well as for the defense that Wood did not fire recklessly and wantonly with the view of killing anybody in utter disregard of human life, but he did fire with the specific purpose of killing some specific person, to-wit, some one of the group headed by Lambert, with which group he had been in conflict, and which, according to the evidence for the defense, was still pursuing him—Lambert certainly. The evidence for the state, which shows that he shot with a specific purpose to kill some one of that group, is contained in the language testified to by the state's witness, to-wit :   "I will stop some of the damned * * *."   It was not proper in this case, where the evidence showed shooting with specific intent to kill some one of a group of assailants, to give this instruction, correct in the abstract, but applicable only where

the evidence shows a shooting with a reckless disregard of life by one of wanton and depraved mind ; not with specific purpose to kill some assailant, but with utter recklessness as to who might be killed. The vice of this instruction in such a case is set in very clear light in the very accurate opinion of our Brother Terral in *Strickland* v. *State* (Miss.), 32 South. 921, s. c., *ante*, 134.

The ninth instruction for the state is as follows : ''The court instructs the jury that, even though they may believe from the evidence that Netherland was going under the tent at the time he was killed, yet the fact would not justify or excuse the killing of Netherland, unless, of course, the jury believed from the evidence that a reasonable man, situated as Wood was, under the circumstances, would have reasonably believed that from such fact of Netherland's coming into the tent his life was in danger, or he was in danger of great bodily harm at the hands of Netherland ; and that to slay Netherland was necessary to protect his own life or his person from injury at the hands of Netherland.'' The vice in this instruction is this: that it narrows the defendant's right entirely too much, in testing his guilt in the killing of Netherland, by what occurred between him and Netherland only, without having any reference to the other theory presented by the evidence for the defense that he shot Netherland supposing him to be one of the attacking group. Of course, on the state's testimony, he had no right to shoot Netherland at all. On the state's evidence—if that was the only evidence in the case—he would be plainly guilty of murder, for on that evidence. he shot at Netherland deliberately with his back turned to him, whilst Netherland was doing nothing in the world but standing some distance from the tent, holding his four-year-old son by the hand. But the testimony for the defense by several witnesses is that Netherland was in the act of raising the side curtain of the tent and going into the cut-off space, where the

Punch and Judy show was to be given, and in which space Wood was standing.

The defense introduced the doctor in the case, from whose testimony some strength was sought to be given to the view that Netherland was shot whilst in a stooping position, and that being shot in this manner accounted for the downward range of the ball. The doctor testified that the range of the ball was downward, but he also says that it struck the shoulder almost on a level, and then ranged a little down. If it was true that the appellant shot Netherland, who was an entire stranger to him, and against whom he had no malice, supposing him to be one of the group with which he had had a controversy about five minutes before, and that that group was still pursuing him, or that Lambert, one of the group, was still pursuing him, it must be obvious that this instruction shut out too rigidly and narrowly all that had preceded, and, according to the testimony of the defense, what was then going on between Wood and Lambert, and confined the jury in determining the question of his guilt to what occurred between him and Netherland alone, with whom he had no quarrel. We think this instruction was highly prejudicial on the facts of this case.

*Reversed and remanded.*