# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-CT-01843-SCT

*DEMARIOUS LATWAN BANYARD a/k/a LIL MURRAY a/k/a MUR-MUR*

*v.*

*STATE OF MISSISSIPPI*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 08/07/2006 |
| TRIAL JUDGE: | HON. TOMIE T. GREEN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | ROBERT B. McDUFF |
| | BRYAN A. STEVENSON |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LADONNA C. HOLLAND |
| DISTRICT ATTORNEY: | ROBERT SHULER SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 09/16/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**LAMAR, JUSTICE, FOR THE COURT:**

¶1. Demarious Banyard was convicted of capital murder and sentenced to life in prison without the possibility of parole. Banyard appealed, claiming, among other things, that the trial court erred when it refused his proffered duress instruction. Finding that Banyard was entitled to have an instruction given the jury which presented his theory of the case, we reverse and remand for a new trial.

**FACTS AND PROCEDURAL HISTORY**

¶2. Demarious Banyard and Dennis Ragsdale[1] were indicted by a Hinds County grand jury for the capital murder of Robin Ballard, a killing which occurred during the commission of a robbery. Banyard, who was thirteen years old at the time of the crime, filed a motion requesting that his case be transferred to youth court, which the trial court denied. Banyard subsequently filed a motion to sever, which the trial court granted.

¶3. At trial, witnesses testified that, on the night of the murder, a group of teenagers was playing basketball at an apartment complex in Jackson. Among the players were nineteen-year-old Dennis Ragsdale and thirteen-year-old Demarious Banyard. According to Traven Kyser, one of the other players, someone came around the corner and said that the "pizza man is out there, let's go rob him."[2] At that point, Ragsdale went to his jeep, got a gun, and came back to the group. Kyser testified that Ragsdale cocked the gun and then took the clip out, but that Banyard did not see him do it. Ragsdale handed the gun to Banyard and said "let's go rob the pizza man." At that point, Kyser testified, Ragsdale and Banyard began walking up to the apartment gate. When asked if he thought Banyard could have "changed his mind if he wanted to," Kyser responded, "Not really, no."

¶4. Adrian Addison, a resident of the apartment complex, testified that he had pulled up to the apartment gate to leave, and that a black Malibu (the pizza delivery man's car) was two

---

[1]Ragsdale ultimately pleaded guilty to manslaughter and was sentenced to twenty years in prison.

[2]Kyser testified that he did not know the identity of the speaker because it was dark.

2

cars ahead of him. He noticed that there were "two guys" standing on the driver's side of the Malibu. After a couple of seconds, Addison heard a gunshot, and then witnessed the "two guys" run past his vehicle back into the apartment complex. When the black Malibu did not pull out of the complex, Addison began blowing his horn. After the Malibu still did not move, Addison got out of his car to investigate. When he got to the driver's side window, he saw that the driver, later identified as Robin Ballard, had been shot in the neck. He put the car in park so that it would not roll into the street and yelled for someone to call an ambulance.

¶5.     Kent Daniels, one of the first detectives on the scene, testified that he arrived at the Westwick Apartments a little after 6 p.m. the night of the murder. He was able to identify the victim as twenty-five-year-old Robin Ballard. As Daniels was talking to the witnesses and beginning to establish a suspect list, one of the other detectives got a call from Banyard's mother, who said that Banyard wanted to turn himself in. Daniels interviewed Banyard that same evening, with his mother present. After waiving his *Miranda*[3] rights, Banyard made a statement, implicating himself and Ragsdale in the shooting.

¶6.     Banyard took the stand in his own defense. He testified that he was getting ready to take his younger cousin home after the basketball game when Ragsdale came up to him, handed him the gun, and said "let's go rob the pizza man." Banyard testified that he did not want to rob the pizza man, but that Ragsdale was looking "serious and mean," and that he

---

[3]*Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed. 2d 694 (1966).

was scared of him. Banyard testified that he had met Ragsdale before, and that Ragsdale had "jumped on [him]" the first time they had met. Although Ragsdale had told Banyard that the gun was unloaded, Banyard testified that he was still scared, because he thought Ragsdale would "put the bullets in the gun and shoot [him]" if he didn't go. They began walking toward the apartment gate, with Ragsdale walking "real close" to Banyard the entire time, saying "go [a]head, come on." When asked why he did not run as they were getting closer to the car, Banyard again responded that he thought Ragsdale would "catch me, put the bullet in and shoot me."

¶7.    When they reached the Malibu, Ragsdale went around to the passenger side and told Banyard to go to the driver's side. Ragsdale told Ballard to "give [him the] money." Banyard testified that he "guessed [Ragsdale] couldn't get the money" because he "came back around" to the driver's side. As Banyard was handing Ragsdale the gun, his finger "tapped the thing and it went off." At that point, Ragsdale started laughing and ran off with the gun, and Banyard followed.

¶8.    At the close of the evidence, defense counsel proffered a duress instruction,[4] which

_____

[4]Banyard's proffered jury instruction D-13 read:

The Court instructs the jury that in order for duress to be a defense to a criminal charge, the impelling danger must be present, imminent, and impending, and such a nature as to induce in a person well-grounded apprehension of death or serious bodily harm if the act is not done and that the danger to the defendant must be continuous.

If you find from the evidence that Demarious Banyard acted under coercion and duress and the coercion and duress was created by Dennis Ragsdale and that the coercion and duress was present, imminent, and impending and induced Demarious

4

the trial judge denied as an "improper statement of law." The record is unclear as to what part of the instruction the trial judge deemed to be incorrect. The trial judge then refused defense counsel's request to submit another duress instruction, stating: "No ma'am. You can argue that but we'll not have a case of law. You want to put that into instructions what your arguments are going to be and the court is not going to just put in your arguments." The trial judge opined that the lesser-included-offense instruction of simple murder covered the duress theory, because she later stated:

> The lesser included instruction of murder includes those arguments that the defense wants to make regarding duress. But it does not entitle this defendant to a duress instruction because the court has allowed the lesser included offense of murder . . . . You don't to get a two-fer [sic]. I allowed the lesser included offense and under the statute you can argue duress, you can argue accident, you can argue misfortune and anything else you want to argue. But I'm not going to give an instruction on that because that's already included in the defense of the lesser included offense of murder.

¶9.    The jury found Banyard guilty of capital murder. Banyard appealed, arguing that the trial court erred when it (1) refused any instruction with the lesser offense of manslaughter;

---

Banyard['s] apprehension of death or serious bodily injury if he did not comply with Dennis Ragsdale's wishes and that such apprehension was continuous throughout the commission by him of the criminal act, then you should find Demarious Banyard not guilty of capital murder.

If you find Demarious Banyard not guilty of capital murder, then you may proceed with your deliberations to decide whether he is guilty of manslaughter.

If you find from the evidence that Robin Ballard was killed by the act, procurement, or culpable negligence of Demarious Banyard and without authority of law, then you should find him guilty of manslaughter.

(2) refused defense counsel's duress instruction; and (3) refused to appoint a psychiatrist to aid in his defense. We assigned the case to the Court of Appeals, which affirmed Banyard's conviction and sentence, and we granted certiorari.[5] *See Banyard v State*, 2009 WL 596013 (Miss. Ct. App. Mar. 10, 2009).

¶10.  While Banyard raises four issues on certiorari, we find the denial of the duress instruction dispositive.  We also address Banyard's claim that the trial court "unconstitutionally shifted the burden of proof" when it gave a jury instruction that required the jury to "unanimously find *beyond a reasonable doubt* that the defendant is not guilty" in order to return a verdict of not guilty.

## ANALYSIS

**I. Whether the trial court improperly denied Banyard's proffered duress instruction.**

¶11.  "On appellate review of the trial court's grant or denial of a proposed jury instruction, our primary concern is that 'the jury was fairly instructed and that each party's proof-grounded theory of the case was placed before it.'"[6]  "We ask whether the instruction at issue contained a correct statement of law and was warranted by the evidence."[7]  "While

---

[5]Banyard filed a motion for rehearing and raised an additional Eighth-Amendment argument not raised at trial or in the initial appeal.  The Mississippi Youth Justice Project, joined by several other organizations, requested permission to file an amicus brief, raising several additional issues, which the Court of Appeals granted.  After additional briefing on rehearing, the Court of Appeals denied Banyard's motion.

[6]*Young v. Guild*, 7 So. 3d 251, 259 (Miss. 2009) (quoting *Splain v. Hines*, 609 So. 2d 1234, 1239 (Miss. 1992)).

[7]*Id.* at 259.

a party is entitled to jury instructions that present his theory of the case, this entitlement is limited; the trial court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence."[8]

¶12.   "A defendant is entitled to have instructions on his theory of the case presented, even though the evidence that supports it is weak, inconsistent, or of doubtful credibility."[9] "If the defendant presents sufficient evidence in the record to support his theory of the case, he should then be given an instruction on his theory of the case.  There needs [sic] not be even a plausible explanation."[10]  "A criminal defendant is entitled to have his jury instructed on all offenses of which an evidentiary basis exists in the record, even where the evidence . . . . arises only in the defendant's own testimony."[11]

¶13.   This Court has held that "where a person reasonably believes that he is in danger of physical harm he may be excused for some conduct which ordinarily would be criminal."[12] We have approvingly cited the four-part test for duress set forth by the Fifth Circuit Court of Appeals:

---

[8] *Id.*

[9] *Ellis v. State*, 778 So. 2d 114, 118 (Miss. 2000) (citing *Giles v. State*, 650 So. 2d 846, 854 (Miss. 1995)).

[10] *Walker v. State*, 913 So. 2d 198, 235 (Miss. 2005).

[11] *West v. State*, 725 So. 2d 872, 888 (Miss. 1998), *overruled on other grounds by Jackson v. State*, 860 So. 2d 653 (Miss. 2003).

[12] *West*, 725 So. 2d at 891 (Miss. 1998).

7

(1) the defendant was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury; (2) that he had not recklessly or negligently placed himself in the situation; (3) that he had no reasonable legal alternative to violating the law; (4) that a direct causal relationship may be reasonably anticipated between the criminal action and the avoidance of harm.[13]

¶14.    Banyard's theory of the case is that he participated in the robbery under duress (thus lacking the necessary specific intent), and that Ballard was accidentally shot when Banyard was handing Ragsdale the gun. He claims that sufficient evidence was presented at trial to support this theory. Thus, Banyard argues, the trial court erred when it refused his duress instruction, because the refusal effectively disallowed the jury from considering Banyard's theory of the case.[14]

¶15.    The Court of Appeals agreed with the trial judge's ruling that the proffered duress instruction was an incorrect statement of law because it included a manslaughter instruction. The Court of Appeals reasoned that, because Banyard had killed Ballard during the course of a robbery, he was not entitled to a manslaughter instruction.[15]

---

[13]*Ruffin*, 992 So. 2d at 1177 (citing *West*, 725 So. 2d at 890 n.7) (citing *United States v. Harper*, 802 F.2d 115, 117 (5th Cir.1986)).

[14]*See, e.g., Reddix v. State*, 731 So. 2d 591, 595 (Miss. 1999) (reversing where "the jury could not have acquitted Reddix based upon self defense because it was not informed of any law permitting them to do so").

[15]*Banyard v. State*, 2009 WL 596013, at *4 (Miss. Ct. App. 2009). *See* Miss. Code Ann. § 97-3-27 (Rev. 2006) ("The killing of a human being without malice, by the act, procurement, or culpable negligence of another, while such other is engaged in the perpetration of any felony, *except those felonies enumerated in Section 97-3-19(2) (e) and (f)*, or while such other is attempting to commit any felony besides such as are above enumerated and excepted, shall be manslaughter.") (emphasis added).

8

¶16.   The Court of Appeals also held that there was no evidentiary basis to support Banyard's proffered duress instruction.  Specifically, the Court of Appeals noted that Banyard had the gun in his hand throughout much of the ordeal, and that he "failed to present evidence that he did not have a reasonable opportunity to avoid participating in the crime," thus negating his duress claim.[16]  We address both findings.

*Was there evidentiary support for a duress instruction?*

¶17.   A defendant is entitled to have an instruction given to the jury presenting his theory of the case even when "the evidence that supports it is weak, inconsistent, or of doubtful credibility."[17]  After a thorough review of the record, we conclude that Banyard presented sufficient evidence to support his duress theory.  Traven Kyser testified that, in his opinion, Banyard could not change his mind once Ragsdale set the events in motion.  Banyard testified consistently that he did not want to rob the pizza man, but that Ragsdale was looking "serious and mean," and that he was scared of him.  Banyard testified that Ragsdale had "jumped on him" the first time they had met.  Although Ragsdale had told Banyard that the gun was unloaded, Banyard testified that he was still scared, because he thought Ragsdale would "put the bullets in the gun and shoot [him]" if he didn't go.  As they walked toward the apartment gate, Ragsdale walked "real close" to Banyard the entire time, saying "go [a]head, come on."  When asked why he did not run as they were getting closer to the car,

---

[16]***Banyard***, 2009 WL 596013, at *4.

[17]***Ellis v. State***, 778 So. 2d 114, 118 (Miss. 2000) (citing ***Giles v. State***, 650 So. 2d 846, 854 (Miss. 1995)) (emphasis added).

9

Banyard again responded that he thought Ragsdale would "catch me, put the bullet in and shoot me."

¶18.   The merits of Banyard's duress claim are for a properly instructed jury to weigh.  The jurors are the judges of the credibility of the witnesses, not the appellate courts.  We need only decide whether Banyard presented sufficient evidence to meet the minimum threshold necessary to require an instruction on his theory.  We find that he did.  Thus, we find that it was error to deny Banyard's duress instruction.

*Was the proffered duress instruction an improper statement of law because it included a manslaughter option?*

¶19.   The Court of Appeals held that the duress instruction was an improper statement of law because it included a manslaughter instruction, an option that, it reasoned, Banyard was not entitled to because Ballard was killed during a robbery.  Mississippi Code Section 97-3-27[18] is a manslaughter statute which specifically excepts the killing of an individual during a robbery from being manslaughter.  But Banyard's theory throughout the entire case was that he had committed the robbery under duress.  Duress is a valid defense for many crimes,

_____

[18]"The killing of a human being without malice, by the act, procurement, or culpable negligence of another, while such other is engaged in the perpetration of any felony, *except those felonies enumerated in Section 97-3-19(2) (e) and (f)*, or while such other is attempting to commit any felony besides such as are above enumerated and excepted, shall be manslaughter." Miss. Code Ann. § 97-3-27 (Rev. 2006) (emphasis added).

The excepted felonies are found in Section 97-3-19(2)(e) and (f):

(e) When done with or without any design to effect death, by any person engaged in the commission of the crime of . . . robbery . . . .

10

including robbery.[19] Thus, if the jury found that Banyard was indeed acting under duress, he could not be found guilty of the robbery of Ballard, one of the essential elements of the capital-murder charge. Upon that finding, the jury then could proceed to consider whether he was proven guilty of any lesser offenses which the trial court had determined were supported by the record, whether they be murder, manslaughter, or both.

¶20. Thus, because we find that Banyard presented a sufficient evidentiary basis to support a duress instruction, the inclusion of a manslaughter instruction was not necessarily improper, as he would be entitled to instructions on lesser offenses should the jury find that he had committed the armed robbery under duress.

**II. Whether the trial court unconstitutionally shifted the burden of proof.**

¶21. Although we find that the trial court's failure to grant Banyard's proffered duress instruction requires reversal, we briefly address Banyard's claim that the trial court "unconstitutionally shifted the burden of proof" when it instructed the jury that in order to find the defendant not guilty, it had to "unanimously find beyond a reasonable doubt that the defendant is not guilty . . . . " The relevant part of Jury Instruction 8, the form of the verdict instruction, stated:

> The Court further instructs the Jury that if *you unanimously find beyond a reasonable doubt* that the Defendant is NOT GUILTY of either "Capital

---

[19]*See, e.g., Wilson v. State*, 390 So. 2d 575, 576 n.1 (Miss. 1980) ("Duress is a valid defense for many crimes including robbery; [h]omicide is an exception.") (citing *Watson v. State*, 55 So. 2d 441, 443 (Miss. 1951) ("[T]he law will excuse a person, when acting under coercion or compulsion, for committing most, if not all, crimes, except taking the life of an innocent person.")).

Murder" or "Murder," then the verdict shall be in the following form, WRITTEN ON A SEPARATE SHEET OF PAPER:

"We the Jury [find] the Defendant NOT GUILTY of Capital Murder AND the jury finds the Defendant NOT GUILTY of Murder."

¶22. Obviously, this instruction was erroneous. It is axiomatic that the burden of proof never shifts to a defendant during a criminal trial, and there is no requirement that the defendant be found not guilty *beyond a reasonable doubt*.[20] As this Court stated in **Pittman v. State**: "[T]he prosecution always has the burden of proving the guilt of [the] accused beyond a reasonable doubt, accused never has the burden of satisfying the jury of his innocence, or to disprove facts necessary to establish the offense charged . . . ."[21]

¶23. The State argues that the jury instructions, read as a whole, properly instructed the jury. Specifically, it argues that Jury Instruction 5, a general burden-of-proof instruction,[22] "cured" the defect in Jury Instruction 8. We disagree. We have said that the rule which requries that all instructions should be read together "does not cure an erroneous instruction

---

[20]*See, e.g.,* **Pittman v. State**, 297 So. 2d 888, 891 (Miss. 1974).

[21]*Id.*

[22]Instruction 5 stated: "The law presumes every person charged with the commission of a crime to be innocent. This presumption places upon the State the burden of proving the Defendant guilty of every material element of the crime with which he is charged. Before you can return a verdict of guilty, the State must prove to your satisfaction beyond a reasonable doubt that the Defendant is guilty. The presumption of innocence attends the Defendant throughout the trial and prevails at its close unless overcome by evidence which satisfies the Jury of his guilt beyond a reasonable doubt. The Defendant is not required to prove his innocence."

12

in conflict with a proper instruction on a vital issue where the proper instruction does not modify or clarify the erroneous instruction."[23]

> The giving of an erroneous instruction containing reversible error cannot be cured by the giving of an inconsistent and correct instruction . . . . A material error in an instruction, complete in itself, is not cured by a correct statement of law in another instruction, for the jury cannot know which instruction is correct and the court cannot know which instruction influenced the jury.[24]

¶24. Thus, we find that the portion of Jury Instruction 8 which required the jury to "unanimously find beyond a reasonable doubt that the defendant is not guilty" was improper and could not have been cured by other correct, yet conflicting, instructions, as we "cannot know which instruction influenced the jury."[25]

## CONCLUSION

¶25. We hold that the trial court erred when it refused Banyard's proffered duress instruction. We reverse the judgments of the Hinds County Circuit Court and the Court of Appeals and remand this case for a new trial.

¶26. **REVERSED AND REMANDED.**

**WALLER, C.J., CARLSON AND GRAVES, P.JJ., DICKINSON, KITCHENS, AND PIERCE, JJ., CONCUR. RANDOLPH, J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION. CHANDLER, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED IN PART BY RANDOLPH, J.**

**RANDOLPH, JUSTICE, CONCURRING IN PART AND IN RESULT:**

---

[23]*McHale v. Daniel*, 233 So. 2d 764, 768 (Miss. 1970).

[24]*Id.* at 769.

[25]*Id.*

13

¶27.   I concur with the majority's conclusion on Issue II.  Without question, the trial court unconstitutionally shifted the burden of proof by instructing the jurors that, in order to acquit Banyard, they must find him not guilty "beyond a reasonable doubt."  Regardless of when the issue was raised, this plain error requires reversal for a new trial.

¶28.   Since this case must be remanded for a new trial, we need not decide whether or not duress as to robbery was established.  Duress may be an issue at trial upon remand, dependent on the evidence adduced.  I do agree with Justice Chandler, based on the evidence presently before us, that Banyard was not entitled to a duress instruction, but that determination is irrelevant to the same issue on retrial. As we do not know what proof will be presented, we cannot know what finding may be appropriate.  In my humble opinion, the majority unnecessarily addressed duress.  Therefore, I would reverse and remand solely on the constitutional error, Issue II.

**CHANDLER, JUSTICE, DISSENTING:**

¶29.   Because I believe that the trial court properly refused to give Banyard a duress instruction, I respectfully dissent.  This Court's longstanding precedent has been that duress is not a defense to murder.  *See Wilson v. State*, 390 So. 2d 575, 576 n.1 (Miss. 1980); *Watson v. State*, 212 Miss. 788, 55 So. 2d 441 (1951); *Taylor v. State*, 158 Miss. 505, 130 So. 502 (1930).  Application of this principle logically has been applied to capital murder cases.  *See Ruffin v. State*, 992 So. 2d 1165 (Miss. 2008); *West v. State*, 725 So. 2d 872 (Miss. 1998) (overruled on other grounds); *Fuqua v. State*, 938 So. 2d 277 (Miss. Ct. App. 2006).  Additionally, I write to address the majority's concern about jury instruction 8.

14

I.

¶30.    This Court reads jury instructions as a whole and not in isolation. *Walker v. State*, 913 So. 2d 198, 234 (Miss. 2005).  When the instructions are read as a whole, "if the instructions fairly announce the law of the case and create no injustice[,]" the appellate court will find no reversible error. *Montana v. State*, 822 So. 2d 954, 958 (Miss. 2002).  "A defendant is entitled to jury instructions on his theory of the case whenever there is evidence that would support a jury's finding on that theory." *Id*. at 962.  However, a trial court may refuse a jury instruction when it is an incorrect statement of law, fairly covered in other instructions, or has no foundation in the evidence. *Ruffin v. State*, 992 So. 2d 1165, 1176 (Miss. 2008); *Poole v. State*, 826 So. 2d 1222, 1230 (Miss. 2002) (citing *Smith v. State*, 802 So. 2d 82, 88 (Miss. 2001)).  Reversal is not warranted when instructions, taken as a whole, fairly, though not perfectly, announce the law. *Rushing*, 911 So. 2d at 537.

II.

¶31.    This Court has upheld a trial court's refusal to grant duress instructions in capital murder cases.  In *Ruffin*, Ruffin was charged and convicted of robbery and capital murder with the underlying felony of kidnapping. *Ruffin*, 992 So. 2d at 1169.  The trial court allowed a duress instruction for the robbery charge because no eyewitnesses refuted Ruffin's claim of duress as to the robbery. *Id*. at 1177.  But the jury also received a jury instruction stating that duress is not a defense to capital murder. *Id*.  Ruffin argued that an additional duress instruction should have been given for kidnapping – the underlying felony in the

15

capital murder charge against him – because the evidence demonstrated that his actions resulted from his fear of being killed by another individual. *Id*.

¶32. This Court determined that Ruffin failed to support his theory of duress with sufficient evidence. *Ruffin*, 992 So. 2d at 1177. This Court acknowledged that duress constitutes a defense to most crimes, such as kidnapping, with homicide the exception to the rule. *Id*. at 1178 (citations omitted). Notwithstanding the acknowledgment that homicide is an exception to a duress defense, the Court analyzed the issue of duress and whether Ruffin proved a "present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury." *Id*. (citing *West*, 725 So. 2d at 890 n.7). This Court found that not only was this case weaker than *West*, discussed below, but also, no rational juror could have found that Ruffin acted under duress, especially since he had the only gun in his possession on more than one occasion. *Id*. Additionally, the Court determined that Ruffin had reasonable alternatives to committing the crime. *Id*. (citing *West*, 725 So. 2d at 887-90).

¶33. This Court has addressed a similar fact pattern in another capital murder trial with alleged duress contributing to the robbery and subsequent murder, as in Banyard's case. In *West*, a defendant was convicted of capital murder for the murder of a convenience store clerk in the course of a robbery. *West*, 725 So. 2d at 877. On appeal, West asserted another claim similar to Banyard's: the trial court erred by refusing a simple murder or a manslaughter instruction where the armed robbery occurred under duress. *Id*. at 887. Unlike *Banyard*, the trial court granted a duress instruction to West. *Id*. at 890. On appeal,

16

however, this Court found that "no rational juror could have found West to have been acting under common-law duress." *Id*. at 890. In other words, West was not entitled to the duress instruction. The Court determined that West's theory of duress was unsubstantiated by the evidence. *Id*. Notwithstanding the fact that West received the erroneous duress instruction on the robbery charge, this Court found that West was not entitled to a duress instruction for the armed robbery, the underlying felony which elevated the charge of murder to capital murder.

¶34. Likewise, in *Fuqua*, the defendant was charged with capital murder, with the underlying felony of sexual battery, and a separate arson charge. *Fuqua*, 938 So. 2d at 280-81. Again, similar to Banyard, Fuqua argued that the trial court erred by refusing to grant a jury instruction on duress. *Id*. at 283. Fuqua claimed that Albert Pitts killed the victim and threatened Fuqua with death if he told anyone about the murder. *Id*. at 280. The Court of Appeals affirmed the trial court's denial of the instruction, finding that "[a] person is not authorized to take the life of another person at the command of a third person, whether he is in fear of such person or not . . . ." *Id*. at 283 (quoting *Wilson v. State*, 390 So. 2d 575, 576 (Miss. 1980)). And assuming that Fuqua had a valid point, the Court of Appeals determined that "no evidence at trial [supported] a finding that Fuqua's death or serious bodily injury was imminent, or that Fuqua was not negligent by placing himself in such a situation." *Id*.

¶35. Banyard was not entitled to a duress instruction on the underlying felony of robbery, because he too failed to provide any evidence that supported "present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or

17

serious bodily injury." ***Ruffin***, 992 So. 2d at 1178 (citing ***West***, 725 So. 2d at 890 n.7); ***Fuqua***, 938 So. 2d at 283. Similar to ***Ruffin*** and ***West***, Banyard had sole possession of the gun as he walked toward the driver's side of Robin Ballard's vehicle. Ragsdale, the alleged threatener, thereafter went to the *opposite* side of the victim's vehicle from Banyard. When the victim did not hand over his money, Ragsdale went to the driver's side of the car, and Banyard claims that the gun fired when he was giving it to Ragsdale.

¶36.    Banyard stated that he had been afraid of Ragsdale due to a previous altercation earlier in the year. While Banyard stated that he feared that Ragsdale would shoot him, Ragsdale never verbally threatened him. Instead, Banyard described Ragsdale as "serious" and "mean." Further, there was no evidence that Ragsdale possessed any other weapon. Therefore, Banyard failed to prove "any present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury." Because Banyard had possession of the only known gun, he had reasonable alternative means other than shooting the victim.

III.

¶37.    While the majority determined that the issue of duress was dispositive to this appeal, it also addressed whether the language in jury instruction 8 unconstitutionally shifted the burden of proof to the defendant. Reading the entire instruction in context coupled with jury instructions 5 and 7, instruction 8 did not shift the burden of proof, and the instructions, taken

18

as a whole, adequately instructed the jury on the charges against Banyard.  Jury instruction

8, in its entirety, stated: [26]

## CAPITAL MURDER

The Court instructs the Jury, that in order for you to convict the Defendant of the crime of Capital Murder, you must unanimously find beyond a reasonable doubt from the evidence in this case that the Defendant, Demarious Banyard, on or about February 24, 2003, wilfully, unlawfully, and feloniously did then and there feloniously take or attempt to take the personal property of Robin Ballard, from the presence of Robin Ballard, against the will of the said Robin Ballard, by violence to his person or by putting Robin Ballard, in fear of immediate injury to his person by the exhibition of a deadly weapon, to-wit: a gun.  The commission of such offense is defined as Armed Robbery.

If the jury first unanimously finds beyond a reasonable doubt that Defendant committed the crime of Armed Robbery or Attempted Armed Robbery, then the Jury must also next find, beyond a reasonable doubt, that on said date, while engaged in the commission of the aforesaid crime of Armed Robbery or [A]ttempted Armed Robbery, that the Defendant Demarious Banyard, wilfully, unlawfully and feloniously, without authority of law, by any means or by any manner, not in necessary self-defense, did then and there kill Robin Ballard, a human being.

In the event that the Jury unanimously finds beyond a reasonable doubt and to the exclusion of any reasonable hypothesis consistent with innocence, from the evidence in this case, that the Defendant, Demarious Banyard, committed both the Armed Robbery and the Killing of Robin Ballard, as defined in this instruction, then the Defendant is Guilty of **"Capital Murder"**, and the form of your verdict should be in the following form, **WRITTEN ON A SEPARATE SHEET OF PAPER**.

---

[26] The trial judge read the instructions into the record.  Her reading of instruction 8 had a few minor differences from the written instruction cited in this separate opinion.  The only noticeable difference was that the judge did not read the "**CAPITAL MURDER**," "**MURDER**," and "**NOT GUILTY**" headers.  Instructions 5 and 7 were read as written and cited in this separate opinion.

**"We, the Jury, find the Defendant Guilty of Capital Murder."**

## MURDER

The Court further instructs the Jury that if you ***DO NOT*** unanimously find the Defendant, Demarious Banyard, is Guilty of Capital Murder, you may continue your deliberations and determine whether the Defendant is guilty of the lesser included offense of **"Murder."**

**"Murder"** is defined as the killing of a human being without the authority of law by any means or in any manner when done with deliberate design to effect the death of the person killed, or of any human being. Therefore, if you **DO NOT** unanimously find beyond a reasonable doubt that the Defendant is guilty of Capital Murder, but you **DO** find, beyond a reasonable doubt, that the Defendant, Demarious Banyard, alone or with another, on or about February 24, 2003, did unlawfully and feloniously, without authority of law and not in necessary self-defense, kill Robin Ballard, a human being, with deliberate design to effect the death of Robin Ballard, then the Defendant, Demarious Banyard, is guilty of Murder.

In the event the Jury unanimously finds beyond a reasonable doubt from the evidence in this case and to the exclusion of any reasonable hypothesis consistent with the innocence, that the Defendant committed Murder as defined in this instruction, then and in that event, the form of your verdict should be in the following form, **WRITTEN ON A SEPARATE SHEET OF PAPER:**

**"We the Jury, find the Defendant Guilty of Murder."**

## NOT GUILTY

The Court further instructs the Jury that if you unanimously find beyond a reasonable doubt the Defendant is **NOT GUILTY** of either "Capital Murder" or "Murder", then the verdict shall be in the following form, **WRITTEN ON A SEPARATE SHEET OF PAPER:**

**"We the Jury finds [sic] the Defendant NOT GUILTY of Capital Murder <u>AND</u> the jury finds the Defendant NOT GUILTY of Murder."**

20

**PLEASE NOTIFY THE BAILIFF WHEN YOU HAVE REACHED YOUR UNANIMOUS VERDICT.**

¶38.   At issue is the language of the last portion of the instruction under the "**NOT GUILTY**" section, which in part states: "The Court further *instructs the Jury that if you unanimously find beyond a reasonable doubt* the Defendant is NOT GUILTY of either "Capital Murder" or "Murder", then the verdict shall be in the following form. . . ." (Emphasis added.) This instruction provided the elements for capital murder and murder and contained a form of the verdict.   Within the first portion of the instruction pertaining to capital murder, the jury had the elements of armed robbery and murder and unanimously had to find beyond a reasonable doubt and to the exclusion of any reasonable hypothesis consistent with innocence, from the evidence in the case, that Banyard committed both armed robbery and the killing of Ballard.   If the jury did not find that the evidence met these elements, then the jury was instructed on the elements of murder.   Only if the jury found that the evidence failed to meet either capital murder or murder, was the jury instructed on the form of the "not-guilty" verdict.   The instruction clearly set out the options of potential findings of either capital murder, murder, or not guilty.   Thus, if the jury found that Banyard was guilty of capital murder, as it did, then the jury had no need to continue with the instruction. But apart from that, the instruction clearly stated that *only if* the elements for each crime were met could the jury find the defendant guilty of capital murder or, alternately, murder.

21

¶39. Additionally, the jury had instruction 5, which explicitly instructed the jury that a person charged with a crime is presumed innocent, that the State has the burden of proving a defendant's guilt of each element of a crime beyond a reasonable doubt, and that a defendant is not required to prove his innocence. Jury instruction 5 stated:

> The law presumes every person charged with the commission of a crime to be innocent. This presumption places upon the State the burden of proving the Defendant guilty of every material element of the crime with which he is charged. Before you can return a verdict of guilty, the State must prove to your satisfaction beyond a reasonable doubt that the Defendant is guilty. The presumption of innocence attends the Defendant throughout the trial and prevails at its close unless overcome by evidence which satisfies the Jury of his guilt beyond a reasonable doubt. The Defendant is not required to prove his innocence.

¶40. Jury instruction 7 instructed the jury on reasonable doubt. It stated:

> The Court instructs the Jury that a reasonable doubt may arise from the whole of the evidence, the conflict of the evidence, the lack of evidence, or the insufficiency of the evidence, but, however it arises, if it arises, it is your sworn duty to find the Defendant "Not Guilty."

¶41. Based on a contextual reading of jury instruction 8 and considering the instructions as a whole, the jury received adequate instructions, and the burden did not shift to Banyard.

IV.

¶42. For the above reasons, I respectfully dissent and would affirm the judgments of the trial court and the Court of Appeals.

**RANDOLPH, J., JOINS THIS OPINION IN PART.**

22