GRIFFIS, J.,
for the Court:
¶ 1. George Ford was convicted of manslaughter and sentenced to serve eighteen years in the custody of the Mississippi Department of Corrections. On appeal, Ford claims that the circuit court failed to provide proper instructions to the jury. We agree, and we reverse and remand for a new trial.
FACTS
¶ 2. On the night of May 17, 2008, in Shelby, Mississippi, Ford and his five year old son stopped at a convenience store to refuel his car and buy some groceries. Inside the store, Cassius Gallion approached Ford, and the two began arguing. Ford claimed the argument was over five dollars that he had refused to loan Gallion a few weeks earlier. After approximately five minutes of the argument, a friend of Gallioris intervened and escorted Gallion outside. According to Ford, Gal-lion’s friend made a threatening remark to Ford as he was leaving the store. He said: “This is not what you really want. Don’t come outside.”
¶ 3. Ford paid for his gas and groceries. A friend of Ford’s who worked at the gas station was afraid that a fight was going to occur in the parking lot, so she escorted Ford’s son out of the store and put him in the passenger seat of Ford’s car. As soon as Ford exited the store, Gallion approached him and resumed the argument. Ford went to his car and began pumping gas, and Gallion followed.
¶ 4. The convenience store was equipped with video surveillance. The video recording and corroborating testimony established that six or seven men surrounded Ford and his car. The evidence also indicated that there was yelling, but nothing in the record established what was said. Ford and his friend, the store employee, both testified they were afraid the group would turn violent. Ford also testified he feared that the group might rob him.
¶ 5. Among the group of men surrounding Ford was a friend of Gallioris named Maído Moore. Eventually, three of the men pulled Gallion away, and the crowd dispersed somewhat. At that point, Moore ran back toward Ford and threw one or two punches, which either struck both Ford and his friend or only struck Ford’s friend. Ford fell back into the driver’s seat of his car. He popped the trunk, ran back to it, and retrieved a handgun.
¶ 6. At this point, there is a dispute in the evidence. The video recording does not provide much clarity. Moore started running away from Ford at some point. It was either as soon as Ford popped his trunk, or it was not until Ford fired the first shot. There was also conflicting testimony on how the shots were fired. Two witnesses testified that the gun jammed after Ford had fired one or two shots and that Ford had to cock it again before it resumed firing. Ford denied the gun ever jammed. The police retrieved either two spent shell casings and three live rounds, or three spent shell casings and two live rounds, from the parking lot. The testimony also differed as to whether Ford aimed the gun at Moore as he fired. Gal- *1247 lion testified that he thought Ford was just trying to scare Moore away and that he was not actually trying to shoot him. Ford testified that he fired shots into the air not intending to hit anyone. Two other witnesses testified that Ford definitely aimed the gun at Moore.
¶ 7. The video recording, which captured still images once every two or three seconds, contained only three frames that were relevant. In one frame, Moore can be seen sprinting away from Ford’s car back toward the store. In the next frame, Moore is already out of the picture, and Ford is a considerable distance away from his car in the direction of Moore with his arm raised as if aiming a gun. The next frame shows Ford turning back toward his car.
¶ 8. Moore was struck by one of the shots in the left side of his torso. He fled to a nearby house, ran inside, and collapsed on the floor. He died shortly thereafter at the hospital. Ford got in his car and drove a short distance to Mound Bayou, Mississippi, where he made arrangements for family members to care for his son, and then he turned himself in to the police.
¶ 9. Ford was indicted for murder. The jury convicted Ford of manslaughter. It is from this judgment that Ford now appeals.
STANDARD OF REVIEW
¶ 10. “In determining whether error lies in the granting or refusal of various [jury] instructions, the instructions actually given must be read as a whole.” Wess v. State, 926 So.2d 930, 934 (¶ 20) (Miss.Ct.App.2005). “When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found.” Id. (citations omitted). “A defendant is entitled to have jury instructions given which present his theory of the case; however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.” Hager v. State, 996 So.2d 94, 97 (¶ 9) (Miss.Ct.App.2008) (citations omitted).
¶ 11. “A defendant is entitled to have instructions on his theory of the case presented, even though the evidence that supports it is weak, inconsistent, or of doubtful credibility.” Ellis v. State, 778 So.2d 114, 118 (¶ 15) (Miss.2000) (citation omitted). The defendant’s own testimony is enough of an evidentiary foundation to require the giving of a jury instruction. West v. State, 725 So.2d 872, 888 (¶66) (Miss.1998) (overruled on other grounds).
ANALYSIS
¶ 12. Ford argues that he is entitled to a new trial because the jury was not properly instructed. We find that the circuit court committed reversible error when it denied Ford’s instruction on justifiable homicide.
¶ 13. In Mississippi, justifiable homicide is defined as follows:
The killing of a human being ... shall be justifiable: ... (e) [w]hen committed by any person in resisting any attempt unlawfully to kill such person or to commit any felony upon him ... (f) [w]hen committed in the lawful defense of one’s own person or any other human being, where there shall be reasonable ground to apprehend a design to commit a felony or to do some great personal injury, and there shall be imminent danger of such design being accomplished....
Miss.Code Ann. § 97 — 3—15(1)(e)—(f) (Rev. 2006).
¶ 14. Ford offered a justifiable-homicide instruction. Ford’s proffered jury instruction reads as follows:
*1248 If you find from the evidence ... George Ford did shoot and kill Mario Moore ... while the said George Ford was resisting an attempt by Mario Moore and others to unlawfully kill George Ford, to rob him, or to commit any other felony upon him or that George Ford had reasonable grounds to apprehend a design on the part of Mario Moore and others acting in concert with him to commit a felony upon George Ford or to inflict some great bodily harm or personal injury upon the person of George Ford or any other human being and there existed an imminent danger of such design on the part of Mario Moore and or others acting in concert with him being accomplished, then the shooting and killing of Mario Moore by George Ford was justifiable and you shall find George Ford not guilty.
¶ 15. Ford argues this instruction was necessary to instruct the jury on three separate theories of his defense that were supported by the evidence and not covered by other instructions. Ford claims that: (a) he had a right to use deadly force to resist the commission of a felony against him, specifically robbery; (b) he had a right to use deadly force to protect his son if he reasonably feared that his son was in danger of serious bodily harm or death; and (c) he had a right to use deadly force if he reasonably feared serious bodily harm, death, or the commission of a felony from the entire group that surrounded his car, rather than from Moore alone.
¶ 16. The circuit court denied Ford’s proffered jury instruction and gave a jury instruction that read:
To make an assault justifiable on the grounds of self-defense the danger to the defendant, George Ford, must be either actual, present and urgent or the defendant, George Ford, must have reasonable grounds to apprehend a design on the part of the victim, Mario Moore, to kill him or do him some great bodily harm. And, in addition to this, he must have reasonable grounds to apprehend that there’s imminent danger of such design being accomplished. It is for the jury to determine the reasonableness of the grounds upon which the defendant, George Ford, acted.
This jury instruction limited the jury’s consideration to Ford’s right to protect himself — not his son — from death or serious bodily harm — not a felony — at the hands of Moore alone — not the group.
¶ 17. If a defendant proffers an instruction that correctly states the law, has a foundation in the evidence, and is not covered elsewhere in the instructions, it is error to deny that instruction. Hager, 996 So.2d at 97 (¶ 9). “A defendant is entitled to have instructions on his theory of the case presented, even though the evidence that supports it is weak, inconsistent, or of doubtful credibility.” Ellis, 778 So.2d at 118 (¶ 15). The defendant’s testimony alone is sufficient to establish the evidentiary basis for a jury instruction. West, 725 So.2d at 888 (¶ 66). It is the jury’s role to decide whether the evidence is credible. Furthermore, any serious doubt as to whether an instruction should be given should be resolved in favor of the accused. Brown v. State, 39 So.3d 890, 900 (¶ 37) (Miss.2010).
¶ 18. Recently, in Banyard, v. State, 47 So.3d 676, 678 (¶ 1) (Miss.2010), the Mississippi Supreme Court held it was reversible error for the circuit court to deny the defendant’s proffered jury instruction on duress. Demarious Banyard claimed he participated in the robbery and murder of a pizza-delivery man only out of fear that his accomplice, an older and stronger man, would seriously injure him or kill him if he did not participate. Id. at 679 (¶¶ 2-7). The only evidence in support of Banyard’s *1249 claim was his testimony and the testimony of one other witness. Id. at 682-88 (¶ 17). The supreme court held that, although the evidence supporting the theory was arguably weak, “the merits of Banyard’s duress claim are for a properly instructed jury to weigh.” Id. at 683 (¶ 18).
¶ 19. Here, there was evidence to support each of Ford’s three theories of defense. First, Ford testified that he was in fear of a robbery. He testified that the argument with Gallion was over five dollars that he had refused to loan Gallion. He also testified that, as the group congregated around his car, he thought they were going to rob him.
¶ 20. Second, Ford testified that he feared harm to his son. Further, the video recording was evidence that the entire event occurred in close proximity — perhaps ten feet — as his son sat in the car. See, e.g., Maye v. State, 49 So.3d 1124 (¶¶ 11-19) (Miss.2010) (proximity of infant daughter sufficient for jury instruction on self-defense and defense of others under section 97-3-15(1)(e)).
¶ 21. Third, the jury should have been instructed to consider the threat posed by the entire group that had congregated around Ford’s car.[1] Certainly, seven men pose a far more serious threat than one man alone. In a similar case, the supreme court held it was reversible error to give a self-defense instruction that focused solely on the threat posed by an individual assailant who was part of a hostile mob. Wood v. State, 81 Miss. 408, 413, 33 So. 285, 286 (1903). As the supreme court explained:
The vice in this instruction is this: that it narrows the defendant’s right entirely too much, in testing his guilt in the killing of [the man], by what occurred between him and [the man] only, without having any reference to the other theory presented by the evidence for the defense that he shot [the man] supposing him to be one of the attacking group.
Id. at 412, 33 So. at 286.
¶ 22. Ford’s proffered justifiable-homicide jury instruction correctly stated the law, had a foundation in the evidence, and was not covered in other jury instructions. Therefore, we are required to reverse the judgment of conviction and remand this case for a new trial. As the supreme court reaffirmed: “[E]very accused has a fundamental right to have [his] theory of the case presented to a jury .... ,[and we] will never permit an accused to be denied this fundamental right.” Chinn v. State, 958 So.2d 1223, 1225 (¶ 13) (Miss.2007) (citations omitted).
¶ 23. For this reason, we reverse the judgment of the Bolivar County Circuit Court and remand this case for a new trial consistent with this opinion.
¶24. In addition, we note that Ford argues on appeal that the jury should have been instructed that his use of deadly force against Moore was presumptively reasonable under the Castle Doctrine. Mississippi Code Annotated section 97-3-15(3) (Rev. 2006) provides in pertinent part:
A person who uses defensive force shall be presumed to have reasonably feared imminent death or great bodily harm ... if the person against whom the defensive force was used, was in the process of unlawfully and forcibly entering, or had unlawfully and forcibly entered ... [an] occupied vehicle.
*1250 ¶ 25. We note that the Mississippi Supreme Court recently decided Newell v. State, 49 So.3d 66 (¶¶ 24-34) (Miss.2010). The circuit court on remand should consider whether Newell requires Ford to receive an instruction under section 97-3-15(3).
¶ 26. Ford’s final argument on appeal is that the jury should have been instructed that it could find him not guilty if it found he had accidentally killed Moore. Ford proffered an instruction that tracked the language of the excusable-homicide statute, which provides:
The killing of any human being ... shall be excusable: (a) [w]hen committed by accident and misfortune in doing any lawful act by lawful means, with usual and ordinary caution, and without any unlawful intent; (b) [w]hen committed by accident and misfortune, in the heat of passion, upon any sudden and sufficient provocation!)]
Miss.Code Ann. § 97-3-17 (Rev.2006).
¶ 27. Ford claims that while he was engaged in lawful self-defense, he accidentally shot Moore. Gallion testified that he thought Ford was only trying to scare Moore away, and Ford testified that he fired shots into the air to scare everyone away and never took aim at anyone. In other words, reasonably fearing death or serious bodily harm at the hands of Moore or the rest of the group, Ford grabbed his gun from the trunk and fired it, not intending to hit Moore but merely trying to scare everyone away. Therefore, Ford contends that it was simply an accident that Moore was fatally struck by one of the bullets.
¶ 28. “[A]n intentional act cannot be excused under the doctrine of accident and misfortune.” Montana v. State, 822 So.2d 954, 963 (¶ 35) (Miss.2002). In Montana, the defendant claimed to have fired his gun into the air to scare away a hostile group of people at a house party; however, one member of that group was fatally struck in the head. Id. at 962 (¶ 30). The supreme court upheld the circuit court’s denial of the defendant’s proffered jury instruction on excusable homicide. Id. The supreme court made clear that the question is whether the act, as opposed to the result, was intentional. Id. at 962 (¶ 33). If the act was intentionally done, there can be no defense of accident or misfortune. Id.
¶ 29. Here, we find the circuit judge was correct in denying a jury instruction on excusable homicide.
¶ 30. For these reasons, we reverse the judgment of conviction and sentence and remand this case for further proceedings consistent with this opinion.
¶ 31. THE JUDGMENT OF THE BOLIVAR COUNTY CIRCUIT COURT IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO BOLIVAR COUNTY.
KING, C.J., LEE, P.J., IRVING, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR. MYERS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION.

. The dissent’s assertion that, as a matter of fact, there was no attacking group is inconsistent with the record. There were several men that surrounded Ford at his car, and there was ample evidence that these men were allied with Gallion and hostile to Ford. One of the men threw a punch at Ford. In assessing the reasonableness of Ford’s response, it would be unrealistic and unfair not to consider the other men and only consider Ford and Moore in isolation.